CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, NJ 07068
(973) 535-0500
Attorneys for Plaintiff, Super 8 Motels, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SUPER 8 MOTELS, INC., a South Dakota corporation, | : |
| Plaintiff, | : |
| | : Civil Action No. 07- |
| v. | : |
| | : **COMPLAINT** |
| MAHESH, INC., a Georgia corporation; and KIRAN PATEL, an individual, | : |
| Defendants. | : |

Plaintiff Super 8 Motels, Inc., by its attorneys, Connell Foley LLP, complaining of defendants Mahesh, Inc. and Kiran Patel, says:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Super 8 Motels, Inc. ("SMI") is a corporation organized and existing under the laws of the State of South Dakota with its principal place of business in Parsippany, New Jersey.

2.      Defendant Mahesh, Inc. ("Mahesh"), on information and belief, is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business at 1170 Hampton Road, McDonough, Georgia.

3.     Defendant Kiran Patel ("Patel"), on information and belief, is a principal of Mahesh and a citizen of the State of Georgia, with an address of 1170 Hampton Road, McDonough, Georgia.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over Mahesh by virtue of, among other things, section 17.4 of the March 22, 2000 Franchise Agreement by and between Mahesh and SMI (the "Franchise Agreement"), described in more detail below, pursuant to which Mahesh has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

6.     This Court has personal jurisdiction over Patel by virtue of, among other things, the terms of a Guaranty (the "Guaranty"), described in more detail below, pursuant to which Patel acknowledged that he was personally bound by section 17 of the Franchise Agreement.

7.     Venue is proper in this District pursuant to section 17.4 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Mahesh of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Super 8 Marks

8.     SMI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

- 2 -

1811532-01

9.     SMI has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Super 8 Marks"), as well as the distinctive Super 8® System, which provides hotel services to the public under the Super 8 name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

10.     SMI or its predecessors have continuously used each of the Super 8 Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

11.     SMI has given notice to the public of the registration of the Super 8 Marks as provided in 15 U.S.C. § 1111.

12.     SMI uses or has used the Super 8 Marks as abbreviations of its brand name.

13.     Through its franchise system, SMI markets, promotes, and provides services to its guest lodging franchisees throughout the United States.  In order to identify the origin of their guest lodging services, SMI allows its franchisees to utilize the Super 8 Marks and to promote the Super 8 brand name.

14.     SMI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Super 8 Marks as distinctly designating SMI guest lodging services as originating with SMI.

- 3 -

1811532-01

15.     The value of the goodwill developed in the Super 8 Marks does not admit of precise monetary calculation, but because SMI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of SMI's goodwill exceeds hundreds of millions of dollars.

16.     The Super 8 Marks are indisputably among the most famous in the United States.

The Agreements Between The Parties

17.     On or about March 22, 2000, SMI entered into the Franchise Agreement with Mahesh for the operation of a 50-room guest lodging facility located at 1170 Hampton Road, McDonough, Georgia, Site No. 13015-89348-1 (the "Facility").    A true copy of the Franchise Agreement is attached hereto as Exhibit A.

18.     Pursuant to section 5 of the Franchise Agreement, Mahesh was obligated to operate a Super 8 guest lodging facility for a twenty-year term, during which time Mahesh was permitted to use the Super 8 Marks in association with the operation and use of the Facility as part of SMI's franchise system.

19.     Pursuant to section 3 of the Franchise Agreement, Mahesh was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the Franchise Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by SMI.

- 4 -

20.     Pursuant to section 3.4 of the Franchise Agreement, Mahesh was required to operate the Facility in compliance with SMI's "System Standards," as defined in the Franchise Agreement, including SMI's quality assurance requirements.

21.     Pursuant to section 4.8 of the Franchise Agreement, SMI had the unlimited right to conduct unannounced quality assurance inspections of the Facility (and unlimited reinspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with SMI's quality assurance requirements.

22.     Pursuant to section 7, section 18 and Schedule C of the Franchise Agreement, Mahesh was required to make certain periodic payments to SMI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

23.     Pursuant to section 3.9 of the Franchise Agreement, Mahesh was required to prepare and submit monthly reports to SMI disclosing, among other things, the amount of gross room revenue earned by Mahesh at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to SMI.

24.     Pursuant to section 3.9 of the Franchise Agreement, Mahesh agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the Franchise Agreement, Mahesh agreed to allow SMI to examine, audit, and make copies of the entries in these books, records, and accounts.

25.     Pursuant to section 11.2 of the Franchise Agreement, SMI could terminate the Franchise Agreement, with notice to Mahesh, for various reasons, including Mahesh's (a)

- 5 -

failure to pay any amount due SMI under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from SMI specifying one or more defaults under the Franchise Agreement, and (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

26.     Pursuant to section 12.1 of the Franchise Agreement, Mahesh agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to SMI in accordance with a formula specified in section 18.1 of the Franchise Agreement.

27.     Section 13 of the Franchise Agreement specified Mahesh's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the Super 8 Marks.

28.     Pursuant to section 17.4 of the Franchise Agreement, Mahesh agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

29.     Effective as of the date of the Franchise Agreement, Patel provided SMI with a Guaranty of Mahesh's obligations under the Franchise Agreement ("Guaranty").  A true copy of the Guaranty is attached hereto as Exhibit B.

30.     Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the Franchise Agreement, he would "immediately make each payment

- 6 -

and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement."

31.    Pursuant to the terms of the Guaranty, Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by SMI in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

<u>The Defendants' Defaults and Termination</u>

32.    From the inception of the Franchise Agreement, Mahesh repeatedly failed to operate the Facility in accordance with SMI's System Standards, in breach of its obligations under the Franchise Agreement.

33.    On September 5, 2001, SMI conducted a quality assurance ("QA") inspection of the Facility. By letter dated  September 19, 2001, a true copy of which is attached hereto as <u>Exhibit C</u>, SMI advised Mahesh that (a) the Facility received a failing score in the QA inspection and, as a result, Mahesh was in default of its obligations under the Franchise Agreement, (b) pursuant to the Franchise Agreement, it had 30 days within which to cure the QA default, and (c) if the default was not cured, then  the Franchise Agreement might be subject to termination.

34.    On November 13, 2001, SMI conducted a QA inspection of the Facility. By letter dated November 16, 2001, a true copy of which is attached hereto as <u>Exhibit D</u>, SMI advised Mahesh that (a) the Facility received its second consecutive failing score in the QA inspection and, as a result, Mahesh remained in default of its obligations under the Franchise Agreement, (b) Mahesh's Additional Termination Rights were null and void, and (c) the Franchise Agreement was subject to termination.

- 7 -

1811532-01

35.     On January 18, 2002, SMI conducted a QA inspection of the Facility.  By letter dated January 29, 2002, a true copy of which is attached hereto as Exhibit E, SMI advised Mahesh that (a) the Facility received its third consecutive failing score in the QA inspection and, as a result, Mahesh remained in default of its obligations under the Franchise Agreement, (b) the Reservation Service would not be restored to the Facility until all defaults were cured to SMI's satisfaction, and (c) the Franchise Agreement was subject to immediate termination.

36.     On August 20, 2003, SMI conducted a QA inspection of the Facility.  By letter dated December 31, 2003, a true copy of which is attached hereto as Exhibit F, SMI advised Mahesh that it received a failing score in the QA inspection.

37.     On February 23, 2004, SMI conducted a QA inspection of the Facility.  By letter dated May 28, 2004, a true copy of which is attached hereto as Exhibit G, SMI advised Mahesh that it received a failing score in the QA inspection.

38.     On July 21, 2004, the Facility received another failing score in the QA inspection conducted by SMI.

39.     By letter dated October 13, 2004, a true copy of which is attached hereto as Exhibit H, SMI advised Mahesh that (a) it was in default under the Franchise Agreement for his failure to satisfy the required Quality Standards, (b) if the default was not cured by January 26, 2005, then the Franchise Agreement would terminate.

40.     By letter dated March 22, 2005, a true copy of which is attached hereto as Exhibit I, SMI terminated the Franchise Agreement and advised Mahesh that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Super 8 System facility, and to discontinue the

- 8 -

use of other materials on the premises effectively to distinguish the same from its former appearance as a Super 8 System facility, (b) all items bearing the Super 8 Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Super 8 had to be changed, (d) it was required to pay to SMI as liquidated damages for premature termination the sum of $50,000.00 as required under the Franchise Agreement, (e) it had to de-identify the Facility within 14 days from the receipt of the notice, and (f) demand was made for all outstanding Recurring Fees through the date of termination.

41.     The termination of the Franchise Agreement precluded Mahesh from any further use of the Super 8 Marks in or around the Facility.

42.     The termination of the Franchise Agreement precluded Mahesh from any further use of the Super 8 Marks to induce the traveling public to use the Facility in any way.

43.     After the termination of the Franchise Agreement, Mahesh continued to use the Super 8 Marks to induce the traveling public to rent guest rooms at the Facility.

44.     After the termination of the Franchise Agreement, Mahesh used the Super 8 Marks without authorization to rent rooms through, among other things, failure to remove Super 8 signage.

45.     By letter dated September 27, 2005, a true copy of which is attached hereto as Exhibit J, SMI reiterated Mahesh's post-termination obligations under the Franchise Agreement, including the requirement that, upon termination, Mahesh completely "de-identify" the Facility as a Super 8.

1811532-01

46.    Mahesh continued to misuse the Super 8 Marks despite receiving notification from SMI to cease and desist from the misuse of the Super 8 Marks.

## FIRST COUNT

47.    SMI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 46 of the Complaint.

48.    Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

49.    Mahesh marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Super 8 Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

50.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

- 10 -

1811532-01

51.     The acts of Mahesh in marketing, promoting, and renting rooms at the Facility, through and with the Super 8 Marks, constitute:

      (a)     a false designation of origin;

      (b)     a false and misleading description of fact; and

      (c)     a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Mahesh's Facility with SMI, and to cause confusion, or to cause mistake, or deception, to the effect that SMI sponsors or approves of the guest lodging services that Mahesh provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

52.     Mahesh's use of the Super 8 Marks in connection with goods and services at the Facility, after the Super 8 Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Super 8 Marks, and lessened and will continue to lessen the capacity of the Super 8 Marks to identify and distinguish the goods and services of SMI, all in violation of Section 43(c) of the Lanham Act.

53.     Mahesh's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

54.     Mahesh's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on SMI.

55.     SMI has no adequate remedy at law.

1811532-01

56.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), SMI demands judgment against Mahesh granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

57.     SMI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Complaint.

58.     Pursuant to sections 3.8 and 4.8 of the Franchise Agreement, Mahesh agreed to allow SMI to examine, audit, and make copies of Mahesh's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

59.     Smith has engaged in acts and practices, as described, which amount to infringement of the Super 8 Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

60.     As a result, Mahesh owes restitution and the disgorgement of profits, in an amount unknown to SMI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Mahesh.

1811532-01

**WHEREFORE**, SMI demands judgment ordering that Mahesh account to SMI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Super 8 Marks.

### THIRD COUNT

61.   SMI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 60 of the Complaint.

62.   On March 22, 2005, SMI terminated the Franchise Agreement.

63.   Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Licensee, Mahesh shall pay liquidated damages to SMI within 30 days of termination.

64.   As a result of the termination of the Franchise Agreement, Mahesh is obligated to pay SMI liquidated damages in the amount of $50,000.00, as calculated pursuant to section 18.1 of the Franchise Agreement.

65.   Notwithstanding SMI's demand for payment, Mahesh has failed to pay SMI the liquidated damages as required in section 12.1 of the Franchise Agreement.

66.   SMI has been damaged by Mahesh's failure to pay liquidated damages.

**WHEREFORE**, SMI demands judgment against Mahesh for liquidated damages in the amount of $50,000.00, together with interest, attorneys' fees, and costs of suit.

- 13 -

1811532-01

## FOURTH COUNT

67.     SMI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Complaint.

68.     By virtue of the premature termination of the Franchise Agreement, SMI sustained a loss of future revenue over the remainder of the twenty year term of the Franchise Agreement.

69.     If the Court determines that Mahesh is not liable to pay SMI liquidated damages as required by section 12.1 of the Franchise Agreement then, in the alternative, Mahesh is liable to SMI for actual damages for the premature termination of the Franchise Agreement.

70.     SMI has been damaged by Mahesh's breach of its obligation to operate a Super 8 guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, SMI demands judgment against Mahesh for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

71.     SMI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 70 of the Complaint.

72.     Pursuant to section 7, section 18 and Schedule C of the Franchise Agreement, Mahesh was obligated to remit Recurring Fees to SMI.

- 14 -

1811532-01

73.     Despite its obligation to do so, Mahesh failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $19,511.01.

74.     Mahesh's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged SMI.

**WHEREFORE**, SMI demands judgment against Mahesh for the Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

75.     SMI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 74 of the Complaint.

76.     At the time of the termination of the Franchise Agreement, Mahesh was obligated to pay SMI Recurring Fees.

77.     Despite its obligation to do so, Mahesh failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $19,511.01.

78.     In addition, Mahesh benefited from its wrongful use of the Super 8 Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to SMI in return for that benefit.

79.     Mahesh's failure to compensate SMI constitutes unjust enrichment and has damaged SMI.

- 15 -

WHEREFORE, SMI demands judgment against Mahesh for the Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit, and all royalties and other Recurring Fees that should be paid to compensate SMI for the period during which Mahesh misused the Super 8 Marks and was thereby unjustly enriched, together with interest and costs of suit.

## SEVENTH COUNT

80.     Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the Franchise Agreement, he would immediately make each payment and perform each obligation required of Patel under the Franchise Agreement.

81.     Despite his obligation to do so, Patel has failed to make any payments or perform or cause Mahesh to perform each obligation required under the Franchise Agreement.

82.     Pursuant to the Guaranty, Patel is liable to SMI for Mahesh's liquidated damages in the amount of $50,000.00, or actual damages in an amount to be determined at trial, and Mahesh's Recurring Fees due and owing under the Franchise Agreement, and for those additional Recurring Fees attributable to the period during which Mahehs has misused the Super 8 Marks.

WHEREFORE, SMI demands judgment against Patel for damages in the amount of:

(a)     All liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit; and

- 16 -

       (b)     All profits, royalties, and other Recurring Fees that should be paid to compensate SMI for the period during which Mahesh misused the Super 8 Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit.

**CONNELL FOLEY LLP**
Attorneys for Plaintiff
Super 8 Motels, Inc.

By: _____
     JEFFREY L. O'HARA (JO6862)

Dated: 4/26/07

- 17 -

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**CONNELL FOLEY LLP**
Attorneys for Plaintiff
Super 8 Motels, Inc.

By:_____
JEFFREY L. O'HARA (JO6862)

Dated: 4/26/07

## DISCLOSURE STATEMENT PURSUANT TO FED. R. CIV. P. 7.1

Pursuant to Federal Rule of Civil Procedure 7.1 and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for Plaintiff, Super 8 Motels, Inc. (a private non-governmental party) certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held:

Wyndham Worldwide Corporation

**CONNELL FOLEY LLP**
Attorneys for Plaintiff,
Super 8 Motels, Inc.

By:_____
JEFFREY L. O'HARA (JO6862)

Date: 4/26/07

- 18 -

1811532-01