**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUPER 8 MOTELS, INC., a South Dakota corporation, | |
| Plaintiff, | Civil Action No. 07-1979 (JAG) |
| v. | **ORDER** |
| MAHESH, INC., a Georgia corporation; and KIRAN PATEL, an individual, | **CLOSED** |
| Defendants. | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion of Plaintiff Super 8 Motels, Inc. ("Plaintiff"), for default judgment against Defendants Mahesh, Inc. ("Mahesh") and Kiran Patel ("Patel") (collectively "Defendants"), pursuant to FED. R. CIV. P. 55(b). Plaintiff seeks damages as a result of an alleged breach and premature termination of a franchise agreement (the "Franchise Agreement") between Plaintiff and Mahesh, and as a result of an alleged breach of a personal guaranty (the "Guaranty") executed by Patel. Plaintiff also seeks treble damages, pursuant to the Lanham Act, 15 U.S.C. §§ 1111 - 1129, for the alleged unauthorized use of Plaintiff's trademarks.

### I. FACTS

Plaintiff does not own or operate any hotels; instead, it operates a guest lodging facility franchise system. (Aff. of K. Noel Hedges, Senior Manager of Franchise Administration for

1

Plaintiff, Nov. 1, 2007 ("Hedges Aff.") ¶ 3.)  On or about March 22, 2000, Plaintiff and Mahesh entered into the Franchise Agreement for the operation of a 50-room guest lodging facility, located at 1170 Hampton Road, McDonough, Georgia (the "Facility").  (Id. at ¶ 5.)  Patel executed the "Guaranty of Mahesh's obligations under the [Franchise] Agreement", effective as of the date of the Franchise Agreement.  (Id. at ¶ 17.)

The Franchise Agreement obligated Mahesh to, inter alia, operate a Super 8 guest lodging facility for twenty years; make renovations in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List"; and "make certain periodic payments to [Plaintiff] for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively[] "Recurring Fees")."  (Id. at ¶¶ 6, 7, and 10; see also Hedges Aff. Ex. A at 1-5, 7-8.)  Plaintiff was permitted to

> terminate the Franchise Agreement, with notice to Mahesh, for various reasons, including Mahesh's (a) failure to pay any amount under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from [Plaintiff] specifying one or more defaults under the Franchise Agreement, and (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

(Id. at ¶ 13; see also Hedges Aff. Ex. A at 11.)

The Guaranty obligated Patel to "immediately make each payment and perform or cause [Mahesh] to perform, each unpaid or underperformed obligation of [Mahesh] under the [] Agreement."  (Id. at ¶ 18; see also Hedges Aff. Ex. B.)

Plaintiff alleges that Mahesh did not operate the Facility in accordance with the "System

Standards," and that on six separate occasions[1] the Facility failed quality assurance inspections. (Id. at ¶¶ 21-26.)  As a result of such failures, Plaintiff terminated the Franchise Agreement on March 22, 2005, and advised Mahesh that, among other things, it "was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Super 8 System facility . . . " (Id. at ¶ 28.)  Plaintiff alleges that Mahesh continued to use the Super 8 marks without authorization.  Therefore, Plaintiff requests damages, including prejudgment interest and attorneys' fees and costs, as a result of Defendants' breaches of the Franchise Agreement and Guaranty.

## II. LEGAL STANDARD

Rule 55(b)(2) states:

> In all other cases, the party must apply for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> > (A) conduct an accounting;
> > (B) determine the amount of damages;
> > (C) establish the truth of any allegation by evidence; or
> > (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2).  "The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 11 (8th Cir. 1977).

---

[1] The inspections occurred on September 5, 2001; November 13, 2001; January 18, 2002; August 20, 2003; February 23, 2004; and July 21, 2004.  (Hedges Aff. ¶¶ 21-26.)

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944).

### III. JURISDICTION

Before the entry of default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir.

1986).

This Court has subject matter jurisdiction over the present case, pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.[2] See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."). This Court also retains supplemental jurisdiction over other claims asserted by Plaintiff, pursuant to 28 U.S.C. § 1367.

To ascertain whether or not a court has personal jurisdiction, a federal court sitting in diversity must conduct a two-step analysis. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates Due Process of the Fourteenth Amendment. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

---

[2] This Court also has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendants are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, Plaintiff is a corporation organized and existing under the laws of the State of South Dakota, with its principal place of business in Parsippany, New Jersey. (Compl. ¶ 1.) Defendant Mahesh is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in McDonough, Georgia. (Id. at ¶ 2.) Defendant Patel is a citizen of the State of Georgia. (Id. at ¶ 3.)

In this forum, the inquiry is collapsed into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States. As such, federal law defines the parameters of this Court's in personam jurisdiction. IMO Indus., Inc., 155 F.3d at 259. The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)). The plaintiff has the burden of proving that the defendant purposefully availed itself of the forum state. Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

Personal jurisdiction, however, is a right that can be waived by the parties. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). A forum selection clause in a contract is one way to effectuate this waiver. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1963).

This Court has personal jurisdiction over Mahesh by virtue of the forum selection clause in the Franchise Agreement, which includes a waiver of objections to personal jurisdiction. This Court also has personal jurisdiction over Patel by virtue of the Guaranty, which incorporates the relevant Franchise Agreement clause. Specifically, Section 17.4 of the Franchise Agreement and the Guaranty, by incorporation, states that Defendants "consent and waive [their] objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you." (Hedges Aff. Ex. A at

17.)

"[I]n a federal forum, the enforceability of a forum selection clause is determined by a generally applicable federal law." Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 201 (3d Cir. 1983), cert. denied, 464 U.S. 938 (1983), overruled on other grounds; Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989). Thus, this Court must look to federal law in determining whether to enforce the forum selection clause in the Franchise Agreement.

The Supreme Court of the United States has held that "[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). This rule reflects the principle that courts should enforce freely negotiated contract terms, and give effect to the legitimate expectations of the parties. M/S Bremen, 407 U.S. at 12. Expanding on this ruling, the Third Circuit has adopted the following three step test:

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202 (quoting M/S Bremen, 407 U.S. at 12-13). A court may refuse to enforce a forum selection clause if any of the factors have been demonstrated. Id.

In the instant case, Mahesh consented to personal jurisdiction in New Jersey by signing, and therefore agreeing to, the terms of the Franchise Agreement. Patel also consented to personal jurisdiction by signing the Guaranty, which incorporates Section 17.4 of the Franchise Agreement by reference. Because none of the M/S Bremen factors are present here, this Court concludes that the forum selection clause is valid. Therefore, this Court has personal jurisdiction

over Mahesh and Patel.

## IV. ANALYSIS

### A. Default Judgment

Defendants have failed to appear, or otherwise plead, in response to Plaintiff's Complaint, filed on April 26, 2007, and personally served on Defendants, by a process server, on May 29, 2007. (See Executed Summons for Defendant Mahesh, May 29, 2007; see also Executed Summons for Defendant Patel, May 29, 2007.) Defendants have also failed to respond to the instant motion, filed on November 1, 2007. Plaintiff served this motion on Defendants via certified and regular mail on the same date. This Court finds that default judgment is appropriate, pursuant to FED R. CIV. P. 55(b)(2), on all counts of the Complaint.

### B. Damages

Plaintiff requests $50,000 in liquidated damages, $29,518.24 in interest on the liquidated damages, $21,260.22 in unpaid Recurring Fees and interest thereon, additional prejudgment interest on the liquidated damages and Recurring Fees for the period between November 26, 2007 and the date of this order, $1,984.95 in attorneys' fees, and $1,071.74 in costs. Plaintiff also requests $505,081.74 in treble damages, pursuant to the Lanham Act, 15 U.S.C. § 1117(a).

Section 18.1 of the Franchise Agreement provides for liquidated damages of "One Thousand Dollars ($1,000.00) for each guest room of the Facility you are authorized to operate at the time of Termination." (Hedges Aff. Ex. A at 18.) The calculation of such damages is, therefore, $1000 * 50 guest rooms = $50,000. As such, Plaintiff's liquidated damages request complies with the terms of the Franchise Agreement.

Section 7.3 of the Franchise Agreement requires Defendants to pay interest at the rate of

8

1.5% per month on "any past due amount payable to [Plaintiff]." (Id. at 8.)  As a result, this Court finds that Defendants must pay interest on the liquidated damages in the amount of $29,518.24.

Section 7 of the Franchise Agreement outlines the various Recurring Fees Defendants are obligated to pay. (Id. at 8.)  The fees, inclusive of interest, are itemized in a statement attached to K. Noel Hedges' Affidavit. (Hedges Aff. Ex. K.)  The statement, however, does not differentiate between the amount of fees owed and the amount of interest owed on such fees.  Therefore, this Court cannot verify the actual amount of Recurring Fees owed, or calculate the amount of interest due to Plaintiff.

Section 17.4 of the Franchise Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Id. at 17.)  However, Plaintiff has not provided sufficient documentation to assure this Court as to the amount of attorneys' fees and costs.  Therefore, this Court will reserve judgment on this amount.

Finally, Section 35 of the Lanham Act states that

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

15 U.S.C. § 1117(a).  While this Court may, in its discretion, award damages pursuant to the Lanham Act, Plaintiff has failed to provide sufficient documentation for this Court to calculate

the amount of damages owed for the period of infringement, approximately March 22, 2005 through September 12, 2005. Plaintiff is correct that, without discovery, it is difficult to determine Mahesh's gross room revenue, or the amount of Recurring Fees due to Plaintiff, during the infringement period; however, Plaintiff fails to provide this Court with documentation to support its calculation of the average Recurring Fees Defendant paid over the term of the Franchise Agreement. As such, this Court reserves judgment on the amount of damages due, pursuant to the Lanham Act.

## V. CONCLUSION

Therefore, for the reasons set forth above, and good cause appearing,

IT IS on this 6th day of February, 2008,

ORDERED that Plaintiff's motion for default judgment (Docket Entry No. 6) is GRANTED as to all Counts of the Complaint; and it is further

ORDERED that default judgment is entered in favor of Plaintiff and against Defendants in the amount of $82,404.43 comprised of the following:

    (a)    $50,000.00 for liquidated damages;

    (b)    $29,518.24 for interest accrued on the liquidated damages, calculated at 1.5% per month;

    (c)    $2,886.19 for interest accrued on the liquidated damages, calculated at 1.5% per month for the period between November 26, 2007 and February 6, 2008; and it is further

ORDERED that judgment is reserved as to the amount of Recurring Fees; and it is further

ORDERED that judgment is reserved as to the amount of interest owed on unpaid

Recurring Fees; and it is further

ORDERED that Plaintiff shall submit documentation specifying the exact amount of Recurring Fees owed, separate from the amount of interest owed on those Recurring Fees; and it is further

ORDERED that Plaintiff shall submit documentation specifying the exact amount of interest owed on the unpaid Recurring Fees; and it is further

ORDERED that judgment is reserved as to the amount of attorneys' fees and costs; and it is further

ORDERED that Plaintiff shall submit an affidavit, pursuant to L. Civ. R. 54.2(a), in support of its request for attorneys' fees and costs; and it is further

ORDERED that judgment is reserved as to the amount of damages owed to Plaintiff, pursuant to the Lanham Act, 15 U.S.C. § 1117(a); and it is further

ORDERED that Plaintiff shall submit documentation to support its claim, pursuant to the Lanham Act; and it is further

ORDERED that a copy of this Order be served on all parties within seven (7) days of the date of this Order.

 S/Joseph A. Greenaway, Jr.  
JOSEPH A. GREENAWAY, JR., U.S.D.J.